ORDERED.

**Dated:  February 21, 2017**

Roberta A. Colton
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re | ) |
| Sara Aye, | ) |
| *aka* Sara Wood-Aye | )    Case No.  8:16-bk-08453-RCT |
| *aka* Sara W. Aye | )    Chapter 13 |
| *dba* State Farm Sara Aye Agency | ) |
| | ) |
| Debtor. | ) |
| | ) |

**MEMORANDUM DECISION AND ORDER DETERMINING
DEBTOR INELIGIBLE FOR CHAPTER 13 AND DISMISSING CASE**

Section 109(e) of the Bankruptcy Code[1] has three requirements for eligibility

for relief under chapter 13.  First, only individuals are eligible for chapter 13.  Second,

the individual must have regular income.  And third, both secured and unsecured

debts must be within the dollar limits in the statute.

After a nasty divorce, Debtor Sara Aye filed a chapter 13 petition.  It is no

secret that she chose chapter 13 to address the obligations stemming from the divorce

decree.  Her former spouse, Walter Aye, moved to dismiss her bankruptcy on grounds

---

[1] Unless otherwise indicated, all statutory references are to 11 U.S.C. §§ 101–1532 ("Code" or
"Bankruptcy Code").

that she is not eligible for chapter 13 and that she filed the case in bad faith. (Doc. 31).  The chapter 13 trustee agrees Ms. Aye is not eligible for chapter 13 because her unsecured debts exceed the statutory limit set forth in section 109(e). (Doc. 29).

At the preliminary hearing on Mr. Aye's motion to dismiss, the court determined that eligibility for chapter 13 was a threshold issue.  The parties were invited to submit briefs on this issue by January 19, 2017.  Upon review of the submissions and the record, the court concludes that Sara Aye is not eligible for chapter 13 relief.

Chapter 13 eligibility requires an individual's "noncontingent, liquidated" unsecured debts to be less than $394,725 and the individual's "noncontingent, liquidated" secured debts to be less than $1,184,200.[2]  Debts are measured as of the day the petition is filed.

A contingent debt depends upon a future event to give rise to liability.  *See Barcal v. Laughlin (In re Barcal)*, 213 B.R. 1008, 1013 (B.A.P. 8th Cir. 1997); *In re Winston*, 309 B.R. 61, 64 (Bankr. M.D. Fla. 2004).  A liquidated debt is a debt made certain, or readily ascertainable, by operation of law or agreement.  Focus is on the amount of the debt, not the existence of future liability.  *See United States v. Verdunn*, 89 F.3d 799, 802 (11th Cir. 1996); *In re Newman*, 259 B.R. 914, 918–19 (Bankr. M.D. Fla. 2001).

Section 109(e) speaks only of debts that are liquidated and noncontingent.  Absent is any mention of whether the debt is disputed.  Thus, a debtor cannot force

---

[2] § 109(e).  These amounts are adjusted every three years to reflect changes in the Consumer Price Index. § 104(a).  The last adjustment occurred April 1, 2016.

eligibility for chapter 13 merely by designating debts as disputed. *In re Knight*, 55 F.3d 231, 234 (7th Cir. 1995), *cited with approval in Verdunn*, 89 F.3d 799; *Vaughan v. Central Bank (In re Vaughan)*, 36 B.R. 935, 938 (N.D. Ala. 1984), *aff'd*, 741 F.2d 1383 (11th Cir. 1984).[3]  Debts listed as "disputed" generally are not "unliquidated" for purposes of section 109(e).  *See Newman*, 259 B.R. at 920 (describing contrary holdings as the "minority view").

The debtor's sworn bankruptcy schedules are the starting point when considering eligibility.  If allegations of bad faith are asserted, other matters in the record may be considered. *Martindale v. Meenderinck (In re Meenderinck)*, 256 F. App'x 913, 914 (9th Cir. 2007); *NCI Bldg. Sys. LP v. Harkness (In re Harness)*, 189 F. App'x 311, 314 (5th Cir. 2006); *cf. Newman*, 259 B.R. at 917 ("[E]ven when there has been no allegation of a lack of good faith in the preparation of the Debtor's schedules, the Court can look beyond the schedules to determine whether the Debtor's debts exceed the statutory amounts.").  Bad faith is alleged here.

*First Sworn Schedules – dated September 29, 2016 (Doc. 1)*

With her bankruptcy petition on September 29, 2016, Ms. Aye filed her original bankruptcy schedules under oath listing all of her debts and assets ("First Sworn Schedules").   She listed total unsecured debts of $620,807.12, of which she identified $452,646.62 as "noncontingent" and "liquidated." (Doc. 1, Schs. E and F).  Her secured

---

[3] A debt is defined in the Bankruptcy Code as "liability on a claim." § 101(12).  Claim is defined, in part, as a "right to payment, whether or not such right is reduced to judgment, . . . [or] disputed". § 101(5).  Eligibility for chapter 13 involves consideration of debts, not claims. § 109(e).  *See, e.g., Knight*, 55 F.3d at 234–35.

debts were listed as $638,193.22. (Doc. 1, Sch. D).  Among the secured debts is an undersecured obligation to Toyota Finance for a car loan.  The unsecured portion of a secured debt is included as unsecured debt in determining eligibility for chapter 13. *See Scovis v. Henrichsen (In re Scovis)*, 249 F.3d 975, 983 (9th Cir. 2001); *In re Grenchik*, 386 B.R. 915, 917–18 (Bankr. S.D. Ga. 2007).  Based on Ms. Aye's valuation of the car, the unsecured amount due Toyota Finance was $9,071.84. (Doc. 1, Sch. D).

Per her First Sworn Schedules, Ms. Aye's noncontingent, liquidated unsecured debt as of the petition date was $461,717.66, and she exceeded the unsecured debt limit for eligibility under chapter 13.

*Second Sworn Schedules – dated December 2, 2016 (Doc. 30)*

On December 2, 2016, Ms. Aye filed an amended Schedule E/F ("Second Sworn Schedules") and reduced her unsecured debt.  She removed a $64,000 debt to David A. Miller and adjust her liability to BMW Financial Service by providing an amount for the debt, which she had originally listed as "unknown." (Doc. 30).

Accepting the Second Sworn Schedules at face value, her noncontingent, liquidated unsecured debts on Schedules E and F are within the statutory limit.  But including the unsecured portion of the undersecured obligation to Toyota Finance, her noncontingent, liquidated unsecured debt is $400,262.46.  This is $5,537.46 over the debt limit for chapter 13 and, thus, on the face of her Second Sworn Schedules, she remained ineligible for chapter 13.

*Third Sworn Schedules – dated January 19, 2019 (Doc. 46)*

After the preliminary hearing and after the attorneys for Mr. Aye and the

Chapter 13 Trustee filed their briefs on the issue of eligibility (Docs. 44 and 45), Ms. Aye pulled a proverbial "bait and switch." At close of business on January 19, 2017, the deadline for submissions, Ms. Aye again amended her schedules (Doc. 46) ("Third Sworn Schedules"), and filed a brief that analyzed eligibility using the newly minted schedules (Doc. 47). Among the schedules amended, Ms. Aye amended Schedules D, E and F. Because of the timing, the Third Sworn Schedules are now reviewed without the benefit of assistance from the trustee or Mr. Aye's counsel.

In her Third Sworn Schedules, Ms. Aye lists noncontingent, unliquidated unsecured debts of $306,015.71, and noncontingent, liquidated secured debt of $790,043.70. On the face of these schedules, Ms. Aye appears eligible for chapter 13.

But that is not the whole story.

The bar date in this case has now passed. Timely filed unsecured claims against Ms. Aye's estate total $1,318,760.18. Given the record and the allegations of bad faith, the court finds it appropriate to make certain adjustments to the Third Sworn Schedules based, in part, on the filed proofs of claim. *Cf. In re De La Hoz*, 451 B.R. 192, 202–203 (Bankr. M.D. Fla. 2011).

In her First and Second Sworn Schedules, Ms. Aye lists her divorce attorney Arnold D. Levine, Esq. as a creditor holding an undisputed, noncontingent, and liquidated unsecured claim in the amount of $111,129. She made this statement, under oath, after she signed a stipulation in the divorce case in which she admitted she owed Mr. Levine $187,757.50, and the amount was reasonable for the services rendered. (Claim 8-1, Ex. 1). The state court entered an order approving the

stipulation.  Based on the state court stipulation, Mr. Levine filed an unsecured claim for $187,757.50, and attached the stipulation and notice of a charging lien.

Ignoring the fact that Mr. Levine filed an unsecured claim, Ms. Aye now lists Mr. Levine as a secured creditor in her Third Sworn Schedules because of the referenced charging lien.  She values the charging lien, which attaches to her recoveries in the divorce decree, as "unknown."  She also schedules, for the first time, Mr. Levine's claim as disputed and unliquidated.

Mr. Levine did not attach any value to his charging lien.  He filed an unsecured claim.  And, of course, Ms. Aye knows well that she recovered nothing in her divorce. This is apparently why she is desperate to stay in chapter 13, so as to discharge the amounts that she was ordered to pay her former spouse.[4]

Yet the debt to Mr. Levine is memorialized and liquidated in a stipulation signed by Ms. Aye on May 18, 2016. (Claim 8-1, Ex. 1).  If Mr. Levine's claim is treated as an unsecured debt, as it must be, Ms. Aye is not eligible for chapter 13.[5] Accounting for Mr. Levine's claim, as filed, Ms. Aye's noncontingent, liquidated unsecured debt is $493,773.21.[6]

[4] In chapter 7 or chapter 11, obligations to a former spouse for property settlements arising from a divorce decree may be nondischargeable. § 523(a)(15).  In chapter 13, however, a debtor may discharge divorce obligations that are not "domestic support obligations." § 1328(a)(2) (excepting from discharge debts specified in § 523(a)(5)).

[5] Ms. Aye cites *In re Robinson*, 535 B.R. 437 (Bankr. N.D. Ga. 2015), as support for the court not to consider the debt to Mr. Levine in assessing eligibility.  But in *Robinson*, the court simply delayed the eligibility determination until a pending case between the debtor and her former lawyer determined liability.  Here, there is no pending matter against Mr. Levine.  In fact, Ms. Aye signed a stipulation acknowledging the debt to Mr. Levine in the amount of $187,757.50, and twice has stated under oath that the debt is not disputed to the extent of $111,129.

[6] The result would not change even if the court were to account for Mr. Levine's claim at the lesser previously scheduled amount.  Ms. Aye would have liquidated, noncontingent unsecured debts of $417,144.71.

But there is more.

Despite the apparent desire to remain in chapter 13 to address the debt owed to her former spouse, Ms. Aye lists the amount of that debt as "0." (Docs. 30 and 46). Walter Aye, in turn, filed an unsecured claim in the amount of $846,679.61. (Claim 6-1). His claim is based on the divorce decree, which holds Ms. Aye liable for certain liquidated mortgage obligations due Bank of America and Chase Mortgage. The divorce decree was amended shortly before this bankruptcy to provide that these mortgage payments are to be made directly "to the Husband [Walter Aye]."[7]

Sara Aye nevertheless lists her obligations under the divorce decree as secured debts because she held bare legal title to Walter Aye's home on the date of her chapter 13 petition. In fact, she lists the property in her schedules as "810 S. Edison Avenue" ("Edison Property") and values the portion of the Edison Property that she "owns" at $1.2 million. (Doc. 1, Sch. A/B; Doc. 46, Amd. Sch. A/B).

This claim of ownership, however, is not quite true. When she filed bankruptcy, the only reason Sara Aye had even bare legal title to the Edison Property is because she failed to comply with the state court order directing her to quit claim the property to Walter Aye. Indeed, the Ayes' final divorce judgement establishes that Sara Aye never had a rightful claim to the Edison Property.

Walter Aye has owned the Edison Property since 1972. Prenuptial agreements provided that the Edison Property would remain Mr. Aye's separate property. Sara

---

[7] Amended Final Judgment of Dissolution of Marriage entered in the Ayes' state court divorce proceedings and the Order on Former Husband's Motion for Rehearing, both dated September 23, 2016. (Claim 6-1, Exs. C and D).

Aye's only claim to title was contingent upon Mr. Aye's death, a contingency that did

not come to pass.  As explained by the state court:

> The Court finds the Husband deeded [the Edison Property] to the Wife
> due to the fact that he thought he was going to die.  The Court finds that
> the deed which named the Wife as an additional grantee was a gift
> "causa mortis".  The Court acknowledges that the Husband did not die;
> therefore, the condition subsequent attached to the Wife's ownership
> interest was not met. . . .  In Summary, the Court finds there is no
> marital property to be divided.

The Bankruptcy Code is clear that property of the bankruptcy estate does not

include bare legal title. § 541(b)(1).  This is why, after filing her bankruptcy case, the

automatic stay was quickly modified to enforce the state court order requiring Ms.

Aye to execute a quit claim deed for the Edison Property.  (Doc. 38).  The issuance of

this quit claim deed was purely ministerial.[8]

Sara Aye's obligations under her divorce decree were not secured by any

property that she owned or had an interest in on the day she filed bankruptcy.  Thus,

those debts also must be considered noncontingent and liquidated unsecured debts.

No doubt Ms. Aye feels wronged by the final divorce judgment and disputes the

obligation.  But such disputes do not factor into the determination of eligibility for

chapter 13.  A court of competent jurisdiction has determined her liability.  It is not

for this court to second guess that determination.

Accounting for her obligations under the divorce decree, as listed in the Third

Sworn  Schedules,  Ms.  Aye's  noncontingent,  liquidated  unsecured  debt  is

---

[8] As an aside, Ms. Aye's proposed chapter 13 plan also treats these obligation as unsecured.  She
proposes to "surrender" her "property" and leave Mr. Aye holding the bag for the debts she was directed
to pay in the divorce decree or face foreclosure of his home. (Doc. 2).

$1,102,495.39.

But there is still more.

In the months leading up to her chapter 13 petition, Ms. Aye leased a 2016 BMW 4 series. This debt is not listed on any of her sworn schedules. Lessor BMW Financial Services NA, LLC ("BMW") filed an unsecured claim for the lease obligation in the amount of $29,229.75. (Claim No. 1). Presumably, though not referenced on her Amended Sch. J (Doc. 46), Ms. Aye has continued to make payments directly to BMW, but she certainly was liable for the remaining portion of the lease when she filed her chapter 13 petition.

Accounting for the debt as filed by BMW, Ms. Aye's noncontingent, liquidated unsecured debt is $1,131,725.14.

There are other shortcomings in Ms. Aye's Third Sworn Schedules involving smaller dollar items; however, the Levine debt alone pushes her well over the statutory limit. The divorce obligations due to Walter Aye and debt to BMW only compound the issue.

Because Sara Aye's noncontingent, liquidated unsecured debts exceed the chapter 13 statutory limit, this case is due to be dismissed. However, Ms. Aye will have the opportunity to convert her case to one under chapter 7 or chapter 11; provided, of course, she qualifies as a debtor under the selected chapter.

So it is **ORDERED**:

1.    Debtor Sara Aye is not eligible to be a debtor under chapter 13 of the Bankruptcy Code because, as of the date of the petition, her noncontingent, liquidated

unsecured debts exceed the statutory limit in § 109(e).

2.      This chapter 13 case shall be dismissed in fourteen (14) days, unless it

is converted to chapter 7 or chapter 11 before that time.


Attorney Theodore J. Hamilton is directed to serve a copy of this decision and order
on interested parties and to file a certificate of service within three days of entry of
this order.